37 C.C.P.A.(Patents)

## LIBBEY–OWENS–FORD GLASS CO.
### v. PLASTRON, Inc.
### Patent Appeals No. 5700.

United States Court of Customs and
Patent Appeals.
June 30, 1950.

Marshall, Marshall & Leonard, Toledo,
Ohio (Watts T. Estabrook, Washington, D.
C., and Harry K. Leonard, Toledo, Ohio,
of counsel), for appellant.

Theodore W. Miller, Chicago, Ill. (Harvey L. Rabbitt, Washington, D. C., of counsel), for appellee.

Before GARRETT, Chief Judge, and
JACKSON, O'CONNELL, JOHNSON
and WORLEY, Judges.

JACKSON, Judge.

On October 15, 1945, appellee filed its
application, Serial No. 489,982, to register
its trade-mark "Plastron," as applied to
shower curtains made from plastic film.
The mark was passed for publication and
appeared as such in the Official Gazette of
the United States Patent Office on February 5, 1946. On March 1, 1946 appellant
filed its notice of opposition to the registration of the said mark, alleging that it
would be damaged by such registration.
On May 10, 1946 appellee, in its answer,
traversed the allegations of appellant's notice of appeal and also set out an affirmative
defense.

In the notice of opposition, the allegations therein relate entirely to the confusion

in trade clause of Section 5 of the Trade-Mark Act of 1905, 33 Stat. 724, 725, as the statutory ground for negativing the right of appellee to register its mark.

Appellant relied upon its trade-mark "Plaskon," which was registered in Registration Nos. 201,254; 323,067; 328.094 and 397,061, dated February 2, 1932, April 2, 1935, September 17, 1935 and August 18, 1942, respectively.

The earliest of those registrations was for "Synthetic heat hardening molding material for use in molding artificial resinous products"; the second for "Condensation products of ureas and aldehydes"; the third for "Formed artificial resin for use as construction material for casings"; and the fourth for "Synthetic resinous compositions for use as ingredients in the manufacture of lacquers, enamels, and finishes."

. It appears that appellee is a fabricator and distributor of articles made from plastic film, among which are "Fabric by the yard," "Shower Curtains," "Jumbo Garment Bags," "Garment Bags," "Linen Bags," "Blanket Bags," "Laundry Bags," "Lingerie Bags and sets," "Shoulder Covers," "Make-up Capes," "Shelf Edgings," "Pillow Covers," "Aprons," and "Costume Bags."

Both parties took testimony and there are many paper exhibits in evidence, including advertisements of plastic articles appearing in magazines and newspapers.

For the reason that the examiner determined that the goods of the parties did not possess the same descriptive properties, he deemed it unnecessary to pass upon the question of whether or not the marks of the parties are deceptively similar. Holding that the respective products do not possess the same descriptive properties within the meaning of the statute for the reason that they relate to descriptively different fields of trade, the Examiner of Interferences dismissed the notice of opposition and adjudged that appellee is entitled to the registration for which it made application.

Upon appeal the Commissioner of Patents affirmed the decision of the Examiner of Interferences in all respects. 78 U.S P.Q. 46. From the commissioner's decision this appeal was taken.

Appellant is concerned with the manufacture and sale of plastic compositions of synthetic resins and plastic materials, including, as appears in the notice of opposition, coating compounds and impregnating compositions of urea formaldehyde and other types, as well as adhesives and molding compounds, all of which, it is alleged, are widely known in the resin and plastic industries. It appeared from the testimony, in addition to those materials, that appellant manufactures and sells melamine formaldehyde industrial resins, phenol formaldehyde glues, polyester impregnating and laminating resins, and urea formaldehyde impregnating and laminating resins. The use by appellant of its mark antedates by many years the first date alleged by appellee.

All of the plastic products of appellant set out herein are raw, or partially prepared materials which have many diversified commercial uses. The synthetic resinous materials of appellant are sold in bulk to manufacturers for use in the fabrication of many articles of merchandise such as "airplane seats; fly rods; lamp shades; decorative sheeting and table tops, impregnated table tops, and honeycomb." It appears that it supplies colored plastic material to be used by manufacturers in making "various types of parts or finished pieces, such as clock pieces, water tumblers, buttons, electrical parts, radio housings, gadgets of all kinds * * * *."

Appellant's products which are in powdered or liquid form are sold entirely to fabricators or distributors in metal or fiber drums containing from 200 pounds to 500 pounds each. It makes or sells no finished articles and its mark "Plaskon" does not appear on such articles manufactured from its products. It is said that some of the manufacturers of the finished products employ their own trade-marks and many others do not.

Appellee's trade-mark is used by it both as a symbol of origin of its products and as a name for the film of which they are

composed. Its products are sold to retailers for resale to housekeepers.

It does not appear that any of the plastic materials sold by appellant have ever been manufactured into shower curtains. Nor does it appear that their chemical compositions are suitable to such manufacture. As far as this record is concerned, it has never made or sold plastic film, nor shower curtains, nor does it appear that any of the customers of appellant ever manufactured shower curtains from any of the materials purchased from it.

Appellant seeks to bring itself within the exception to the general rule that raw or other basic materials of general utility in the manufacture of finished articles do not possess the same descriptive properties as the various products for which they are adapted. In order to do so it must be shown that the properties of an article which generally govern the selection of purchasers are inherent in the particular material of which it is made. There is nothing in the record, as hereinbefore pointed out, that any of the plastic compositions manufactured by appellant is adapted for use in the manufacture of appellee's shower curtains. Neither is there anything to indicate that the film of appellee is suitable to be used in the manufacture of any other articles than those of the kind sold by appellee.

Appellant has shown that its principal competitor manufactures plastic compositions similar to those made and sold by appellee, as well as compositions adaptable for use as a material for shower curtains. It contends that because of such manufacture by its competitor it should be held that "it is entirely possible, in fact probable" that appellant will also manufacture and sell shower curtains. There is nothing to show that it has any intention of so extending its business. We deem it logical to conclude, as was held by the Examiner of Interferences, that the rights of appellant cannot include a speculative future use of its mark.

For the reason that in our opinion the goods of the parties differ in their descriptive properties, we may not infer probable damage to the appellant, even though their respective marks are closely similar. Goldsmith Bros. v. Atlas Supply Co., 148 F.2d 1016, 32 C.C.P.A., Patents, 1001.

It is obvious that the market for the involved goods of the respective parties are distinctly and entirely different. They are not sold through the same outlets; the goods of appellee are ordinarily purchased by the general public, while those of appellant are bought in huge quantities and by manufacturers who in turn produce finished articles from appellant's material, the trade-mark identity of which does not follow through to the ultimate consumer.

We have considered with care all of the contentions of appellant herein and have examined the many cases cited to sustain its contentions. In this jurisdiction, cited cases are of little assistance for the reason that each case depends entirely on its own involved facts. Therefore we deem it unnecessary to discuss any of the many authorities with respect thereto.

For the reasons hereinbefore set out, the decision of the Commissioner of Patents is affirmed.

Affirmed.

O'CONNELL, Judge (dissenting).

Appellant, a pioneer in the plastic industry of America, owns and has continuously used the registered trade-mark "Plaskon" since February 2, 1932, in connection with resinous and plastic material manufactured and sold by appellant to fabricators and distributors. They reproduced the plastic composition and resold it to the public in many diversified forms of merchandise, including printed fabrics, or decorative sheets, made out of polyester resins. 78 U.S.P.Q. 46.

Appellee is a fabricator and distributor of plastic goods, principally shower curtains made of film consisting of polyvinyl chloride resinous material. To that merchandise, and similar articles of the specie, appellee in the summer of 1945 created and appropriated the mark "Plastron," which to all intents and purposes is identical in

sound, meaning, and appearance with appellant's mark "Plaskon."

Appellant over an extended period of years has spent large sums of money in advertising the trade-mark "Plaskon" by direct appeals not only to the housekeepers and homeowners of the nation but also to the fabricators and distributors who resold appellant's goods to the public. The amount spent for such advertising by appellant over the past five years approximated $80,000 a year, or $400,000. Appellee in its testimony has shown no expenditure for advertising. Appellant does all the advertising.

In fact, appellant's averment in the notice of opposition has been explained by appellee, but not refuted, to the effect that the word "Plastron" published and illustrated in the Official Gazette of the Patent Office appears in rough script or brush strokes identical in detail with the rough script or brush stroke letters used by appellant in advertising "Plaskon" long prior to the time appellee entered the field during the summer of 1945.

There is no question here of appellee's right to manufacture and sell, ad infinitum, shower curtains and similar items made from plastic film; the question is what legal right does appellee have to appropriate and attach the appellant's practically identical mark to those goods.

None of appellant's presently produced materials have been used in the manufacture of shower curtains. Appellant has introduced evidence, however, to the effect that its most active competitor in the plastic and resin industry, Bakelite Corporation, uses polyvinyl chloride like appellee does to produce shower curtains which it advertises widely and sells to the public.

Appellant contends that the production of plastic film for use in shower curtains represents a natural and expected extension of the business of a general resin and plastic manufacturing company, such as appellant, and that appellant should not be hampered or embarrassed by the registration to appellee of a similar and substantially identical mark for concurrent use on shower curtains.

The same contention was advanced by appellant before the tribunals of the Patent Office where the adverse ruling was made that no "merely speculative future use of the opposer's [appellant's] mark on goods other than those to which it is now appropriated [can] add anything to its present rights therein," citing Pratt & Lambert, Inc., v. Chapman & Rodgers, Inc., 136 F.2d 909, 30 C.C.P.A., Patents, 1228.

The decision in the Pratt & Lambert case was ably written by the late Judge Hatfield who therein approved the doctrine of the "legitimate expansion" of business to include the protected use of an existing trade-mark. There was no application of the doctrine in that case, however, because, as stated, "the goods of the parties [paints and insecticides] differ so widely in composition and use" and because the appellant proposed to branch out into an unrelated business for which the appellant had no machinery or manufacturing processes for the making of insecticides.

The first appropriator of a trade-mark has the right to the use of the mark not only on the goods in which he deals but also on goods which he may afterwards produce or handle if they have the same essential qualities as those upon which he has been using the mark. Beck, Koller & Co., Inc. v. Bakelite Corp., 90 F.2d 349, 351, 24 C.C.P.A., Patents, 1290, 1293; Canton Culvert & Silo Company v. Consolidated Car-Heating Company, 44 App.D.C. 491.

Appellant in the case at bar has a research division with laboratories in which twenty scientists are employed, divided into six groups. Some of those groups are constantly at work on the improvement of existing commercial products and other groups are employed on products under development. New products are constantly being developed in the research laboratories and thereafter turned over to the new products sales division for promotion.

Appellant already manufactures eight different types of plastic or resinous materials and it is obvious that an expansion of trade to include a ninth would be but a slight expansion and one most likely to occur. Moreover, the plant, equipment,

and personnel of appellant appear to be ready for the job. In other words, appellee, has no right to impede appellant in the use of its long and previously established mark in the natural expansion of appellant's business. Pratt & Lambert, Inc., v. Chapman & Rodgers, Inc., supra; Gutta-Percha & Rubber Mfg. Co. v. Ajax Mfg. Co., 48 App.D.C. 230; L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272.

There can be no question that the mark of appellee, the newcomer, so nearly resembles the mark owned and in use by appellant in this case as to be likely to cause confusion and deceive purchasers. It is not the difference in the goods which causes the likelihood of confusion; it is the lack of any difference in the marks by which the goods of one of the producers may be distinguished from the goods of the other. Skol Company, Inc. v. Olson, 151 F.2d 200, 33 C.C.P.A., Patents, 715; Williams v. Kern & Sons, 47 App.D.C. 441.

The decisions rendered in the case at bar have all held under the Trade-Mark Act of 1905 that there was no likelihood of confusion because the involved goods were not goods of the same descriptive properties. The record discloses that the opposition proceeding here in issue was pending before the Patent Office undetermined, even by the Examiner of Interferences, during the effective period of the Trade-Mark Act of 1905.

The issue here involved was first determined by the examiner, and subsequently by all others, after the effective date of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq. That act not only repealed all previous acts but also abolished the provision for "merchandise of the same descriptive properties" as a test for the likelihood of confusion. S. C. Johnson & Son, Inc., v. Johnson, 2 Cir., 175 F.2d 176.

Where there is no need to consider whether the involved goods are goods of the same descriptive properties, this court in a proper case has held, for example, that the word "Esquire" previously appropriated as a trade-mark for use on a magazine could not be subsequently appropriated by a newcomer for use on a machine for molding hamburgers. Holly Molding Devices v. Esquire, Inc., 148 F.2d 355, 32 C.C.P.A., Patents, 935.

Points relied upon in the decisions which have been rendered in this case really have no legal significance. For example, those decisions have dramatized the fact that the smallest container in which appellant's liquid resins were delivered to the fabricators was a 200-pound drum. The drums containing the composition delivered to appellee to be fabricated by appellee into shower curtains likewise might have been the same or larger size. Just what the size of a drum has to do in the determination of the question as to whether the respective compositions are goods of the same descriptive parties is hard to understand.

Furthermore, present marketing methods as to the distribution of appellant's products are not of controlling importance since modern trade practices are subject to change from day to day, and absence of actual confusion in trade is likewise of no importance in an opposition proceeding because the mandate of the statute is directed against the registration of a mark which is likely to cause confusion. Celanese Corporation of America v. E. I. Dupont De Nemours & Co., 154 F.2d 146, 33 C.C.P.A., Patents, 948.

The case last cited discloses that the Dupont Company produces a cellulose composition sold to fabricators and distributors for resale by them directly or indirectly to the public. In that situation, however, and under a marketing arrangement, the trademark "Dupont" is attached by the fabricator and distributor to the finished product which reaches the ultimate consumer. There is no reason in the case at bar why appellant could not likewise provide for the attachment of its trade-mark "Plaskon" to articles made from that composition.

Appellee has included more than 70 printed pages in the record disclosing numerous different marks registered to third parties. Such registrations are not of aid to one seeking a registration. Weyenberg Shoe Manufacturing Co. v. Hood Rubber Co., 49 F.2d 1046, 18 C.C.P.A., Patents, 1449.

The citation by the respective parties of numerous prior decisions of this and other courts is likewise of no avail. Such cases are of value only in so far as the principles of trade-mark law are stated and therein applied. Lactona, Inc., v. Lever Brothers Co., 144 F.2d 891, 32 C.C.P.A., Patents, 704.

It should be noted further that the Court of Customs and Patent Appeals has not considered itself bound by the prior judgments of other courts even in cases where the cited marks were identical, where the goods were identical, and where the ultimate facts in issue were identical. Van Camp Sea Food Co., Inc., v. Alexander B. Stewart Organizations, 50 F.2d 976, 18 C.C. P.A., Patents, 1415; Ex parte Westgate Sea Products Co., 84 U.S.P.Q. 368.

For the reasons hereinbefore stated, the decision of the Commissioner of Patents should be reversed.