46 CCPA

**ESSO STANDARD OIL COMPANY,**
**Appellant,**

**v.**

**BIGELOW–CLARK, INC., Appellee.**
**Patent Appeal No. 6378.**

United States Court of Customs
and Patent Appeals.
April 28, 1959.

William E. Schuyler, Jr. and Francis C. Browne, Washington, D. C. (Thomas L. Mead, Jr., Andrew B. Beveridge, and Mead, Browne, Schuyler & Beveridge, Washington, D. C., of counsel), for appellant.

James W. Fitzsimmons, East Rockaway, N. Y. (Robert C. Sullivan, Washington, D. C., of counsel), for appellee.

Before O'CONNELL, Acting Chief Judge, and WORLEY, RICH and MARTIN, Associate Judges.

MARTIN, Judge.

This is an appeal from the decision of the Commissioner of Patents, speaking through the Assistant Commissioner, affirming the decision of the Examiner of Interferences, dismissing a notice of opposition by Esso Standard Oil Company, appellant, to the registration by Bigelow-Clark, Inc., appellee, of the word "Parm" as a trademark for an antiseptic rubefacient for massaging, and as a palliative for minor cuts, bruises, and skin irritations, in Class 19—Medicines and Pharmaceutical Preparations.

The opposition was based, in part, on opposer's use of the mark "Parmo," and, in part, on its registration, No. 153,870, of that mark for use on petrolatum in Class 6, "Chemicals, medicines and pharmaceutical preparations." No testimony was presented by either party, but the following stipulation was agreed to:

Stipulation of facts, December 3, 1954

It is mutually stipulated and agreed by and between counsel for opposer, Esso Standard Oil Company, and counsel for applicant, Bigelow-Clark, Inc., the Honorable Commissioner of Patents consenting, that the following facts be deemed established for the purpose of the above entitled proceeding only.

I. Opposer's predecessor adopted and used at least as early as 1920, and opposer is still using in commerce among the several States which may lawfully be regulated by Congress, the trade-mark Parmo for liquid and semi-liquid petrolatum and oils.

II. Opposer is the owner of U. S. Trade-Mark Registrations Nos. 153,870 and 261,794, each of which is valid, subsisting, unrevoked and uncancelled.

III. Opposer has registered its trademark Parmo in foreign countries and sells its liquid and semi-liquid petrolatum and oils under said trade-mark not only throughout the United States but also in commerce with foreign countries.

IV. Applicant has used the mark sought to be registered since June of 1953 in connection with an antiseptic rubefacient.

V. Liquid and/or semi-liquid petrolatum is used as an ingredient of rubefacients.

VI. The sole question for determination by the Examiner of Trade-Mark Interferences is whether or not the mark Parm, when applied to applicant's goods, namely, a rubefacient, so resembles opposer's previously used and registered trade-mark Parmo for liquid and/or semi-liquid petrolatum, as to be likely, when applied to the goods of the applicant, to cause confusion, mistake or deception of purchasers, within the meaning of Section 2(d) of the Trade-Mark Act of 1946 [15 U.S.C.A. § 1052(d)].

In view of the stipulation, the sole issue here is whether concurrent use of "Parm" and "Parmo," on the goods of the respective parties would be likely to result in confusion in the trade.

It is evident that "Parm" and "Parmo" so closely resemble each other that their concurrent use as trademarks on similar goods, marketed in a similar manner, would be likely to result in confusion in the trade.

The examiner held that "The burden is upon an opposer to prove facts in support of his complaint from which it can be determined that he is entitled to the relief sought," and that such burden had not been sustained since the only use of petrolatum mentioned in the stipulation was as an ingredient of rubefacients, and the record failed to show that the respective goods of the parties had similar uses.

The Commissioner, in affirming the examiner, stated that "Liquid and semi-liquid petrolatum are ordinarily sold for industrial use, and there is nothing in the record here to indicate that opposer's petrolatum is otherwise sold" and that "applicant's product, an antiseptic rubefacient, is ordinarily an over-the-counter consumer item." It was therefore concluded that the respective goods of the parties move through different channels to different purchasers so that there would be no opportunity for mistake and confusion, and that "if the facts are otherwise the burden of going forward with its proofs was on opposer and it has not discharged the burden."

As above noted, appellant's notice of opposition was based in part on a trade-mark registration. Section 7(b) of the Lanham Act (Trademark Act of 1946), 15 U.S.C.A. § 1057(b) provides that such a registration shall be prima facie evidence "of registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein;" and we have repeatedly held that a trademark registration constitutes prima facie evidence of the registrant's ownership and use of the registered mark on the goods set forth in the registration, so that absent contradictory evidence, no further proof by the registrant as to such use is necessary. May Department Stores Co. v. Kenya Corp., 234 F.2d 870, 43 CCPA 940; May Department Stores v. Schloss Bros. & Co., Inc., 234 F.2d 879, 43 CCPA 980; and cases there cited. Further, in General Shoe Corporation v. Lerner Bros. Mfg. Co., Inc., 254 F.2d 154, 157, 45 CCPA 872, this court held that where an opposer relies on both a registration and other evidence as to use of the mark, he is not limited to the specific uses shown in his testimony, but may rely on the pre-

sumption that the registered mark has been in use on all the goods set forth in the registration. The following statement in that decision is pertinent here:

"Even though the net effect of the evidence of record may be to create the impression that opposer is now primarily concerned commercially with women's shoes under the 'Holiday' mark, we do not feel that this can be controlling of the issue so long as the opposer's earlier registration of 'Holiday' is not so limited. We have to decide on the basis of the registration and the statute."

In the instant case appellant's registration of "Parmo" for petrolatum antedates by many years appellee's first alleged use of "Parm." While the Commissioner stated that petrolatum is "ordinarily sold for industrial use," there is no evidence of record to that effect. The statement in the stipulation that "petrolatum is used as an ingredient of rubefacients" clearly does not establish that such use is the principal one or even a common one, or that the ordinary use of petrolatum is for industrial purposes. Many materials, such as sugar and flour for example, which are sold in large quantities for industrial purposes, are also commonly sold in retail quantities on an over-the-counter basis. Accordingly, the record affords no basis for limiting the presumption of use arising from opposer's registration to wholesale or industrial uses. Rather, the stipulation shows opposer's use in commerce of "the trade-mark Parmo for liquid and semiliquid petrolatum and oils," irrespective of marketing procedure.

Rubefacients are materials which, upon external application, produce redness of the skin, while petrolatum is defined by Webster's New International Dictionary, Second Edition, as follows:

"Petrolatum, n. Pharm. A neutral unctuous substance, without taste or odor, derived from petroleum by distilling off the lighter portions and purifying the residue. Several forms are recognized, namely:

(1) A yellow to light-amber semisolid form known as petrolatum, petroleum jelly, or soft paraffin. (2) A decolorized variety of this form known as white petrolatum or white petroleum jelly. (3) A colorless or faintly yellow liquid form known as liquid petrolatum, liquid paraffin, white mineral oil, or paraffin oil. Several of the foregoing are also marketed under well-known trademarks, as Vaseline, etc. The semisolid forms are used chiefly as bases for ointments or as vehicles for certain medications while the liquid forms are used in the preparation of nasal sprays and as lubricants for the intestinal tract."

While there is no specific evidence of record as to how appellee's rubefacient is sold, it was held below that it is an over-the-counter consumer item and the parties appear to be in agreement that such is the case. In the absence of any evidence to the contrary, we hold, as a matter of common knowledge, that petrolatum is sold in a similar manner.

Under the circumstances above set forth we are unable to agree with the Commissioner that the burden was on the opposer to show by affirmative evidence that petrolatum and rubefacients are marketed in the same manner. In view of the similarity of the goods, the scope of appellant's registration and the other circumstances noted above, we are of the opinion that it was incumbent on appellee to establish that the goods are marketed in different manners, if that is the case, and, in the absence of evidence to that effect it must be presumed that the same methods of marketing are employed, at least in some cases.

At the hearing, counsel for appellee noted that the specimens showing use of opposer's mark, which accompanied the notice of opposition, are of a size and nature clearly suggesting wholesale, rather than over-the-counter marketing. That fact might be significant if the opposer had been relying solely on actual use but, as above pointed out, it cannot serve to

restrict the prima facie case made out by opposer's registration. The fact that opposer sells petrolatum wholesale cannot be taken as showing that it and/or others do not also sell it retail. Moreover, as was said in Celanese Corporation of America v. E. I. Dupont De Nemours and Company, 154 F.2d 146, 33 CCPA 948, trade practices may change and a party who does not deal directly with the purchasing public may later do so as a result of normal expansion of his business.

Appellee relies strongly on the decision of this court in Libbey-Owens-Ford Glass Company v. Plastron, Inc., 183 F.2d 110, 37 CCPA 1175. That case involved the use of similar trademarks on shower curtains, and on resinous compositions adapted for use in manufacturing various articles. Such goods differed in their descriptive properties since it appeared that the resinous compositions were used *only* as raw materials while the shower curtains were finished articles. In fact, the court found that " * * * it is obvious that the market[s] for the involved goods of the respective parties are distinctly and entirely different." Therefore, the Libbey-Owens-Ford case is clearly distinguishable.

Appellee also relies on the decision of the Assistant Commissioner in Sanford Ink Co. v. Stevens, 102 USPQ 454. That decision, so far as pertinent here, appears to hold that it is incumbent on a registrant-opposer to submit evidence of the character and extent of use of his registered mark other than the registration itself, even in the absence of evidence rebutting such use. Such holding is at variance with the later decisions of this court in the May Department Stores, and General Shoe Corporation cases, supra, and accordingly will not be followed here.

■ It is evident that there is a strong similarity between the marks "Parm" and "Parmo," since they are apparently arbitrary marks and differ only by a single letter. Appellant has a subsisting unqualified trademark registration of "Parmo" for use on petrolatum. Petrolatum is a very common over-the-counter item in retail quantities. Rubefacients are also sold at retail over-the-counter in the same kind of stores to the same class of purchasers. Under these circumstances we are of the opinion that concurrent use of the marks "Parmo" and "Parm" by different parties on petrolatum and rubefacients, respectively, would be likely to lead to confusion or mistake, and that appellant's opposition should therefore have been sustained.

The decision of the Commissioner is reversed.

Reversed.

WORLEY, Judge (dissenting).

There is ample evidence of record to support the reasoning and conclusions of the examiner and the Assistant Commissioner that the opposer did not discharge its burden of proof.

To reverse that holding it is necessary for this court to indulge in assumptions as to the correctness of matters easily susceptible of proof, and which, I respectfully suggest, should more properly have been established below. I do not think the record here fairly supports the assumptions which are apparently necessary to reverse the holding appealed from. I would affirm.