55 CCPA

## Application of CONTINENTAL BAKING COMPANY.

### Patent Appeal No. 7863.

United States Court of Customs and Patent Appeals.

Feb. 15, 1968.

Rehearing Denied April 11, 1968.

Warren H. Rotert, New York City (Morgan, Finnegan, Durham & Pine, Granville M. Pine, New York City, of counsel), for appellant.

Joseph Schimmel, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, CLARK, Justice,* and RICH, SMITH, and KIRKPATRICK,** Judges.

WORLEY, Chief Judge.

■ Continental seeks registration of "County Fair" for fresh bread, cake and sweet goods—namely cinnamon sticks, sweet rolls and assorted pastries. Registration has been refused on the ground that applicant's mark so resembles the mark "County Fair," previously registered for frozen fruit and cream pies, as to be likely to cause confusion. In so holding, the Trademark Trial and Appeal Board stated, 147 USPQ 333:

> Applicant's director of marketing in his affidavit has pointed out the differences in the production and marketing of fresh bread, cake and sweet goods, on the one hand, and frozen fruit and cream pies on the other. Notwithstanding that there may be differences in the production and marketing of such goods by companies as the applicant and registrant, it is common knowledge that bread, cake, sweet goods, and pies of all sorts are produced and/or sold in the same bake shops. It may be argued that this is true only with regard to the neighborhood bakery but the fact remains that the public knows that bread, rolls, cakes, pastries and pies do emanate from a single producer or seller. In this regard we note that applicant, through its various divisions, produces and sells bread, rolls, pastries, frozen fruit pies and frozen cream pies.

> The involved products are bakery products which are sold in the same type retail outlets to the same class of

---

* Retired, Supreme Court of the United States, sitting by designation.

** Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

purchasers. In view of the identity of the marks, we conclude that there is a likelihood of confusion.

We have found nothing in the record to refute that reasoning and conclusion.

■ During proceedings below appellant introduced a document signed by an officer of Carnation Co., present owner by assignment of the registered mark "County Fair." In evaluating that instrument the board stated:

> Applicant has submitted an affidavit by an official of the Carnation Company, the present owner of the cited registration, and it is stated therein that "The said Carnation Company hereby consents, in the matter of the above-entitled trademark application, and otherwise to the use by the Continental Baking Company of the trademark 'County Fair' for fresh bread, cake and sweet goods," and further that "The Carnation Company, being engaged in and thoroughly familiar with the business of food production and distribution, considers said goods * * * to be in a different category from frozen fruit and cream pies * * *, and believes that the use by Continental Baking Company to which consent is above given is in no way likely to cause confusion or mistake or to deceive."

A fair reading of the above clearly indicates that the owner of the cited registration consents to applicant's *use and registration* of "County Fair" for bread, cake and sweet goods. (Emphasis supplied).

> *   *   *   *   *   *

The cases relied upon by applicant are readily distinguishable. In the case of In re National Distillers [&] Chemical Corp., [297 F.2d 941, 49 CCPA 854] 132 USPQ 271, 273 (CCPA, 1962), the court ruled that the marks there involved did not look alike, sound alike nor evoke the same psychological responses and in the

case of In re Electro Vox, Inc., 134 USPQ 463 (TT&A Bd., 1962) the cited mark and the mark sought to be registered were not the same. In the instant case, we have identical marks. The situation here also differs from that of In re A. C. Gilbert Company, 135 USPQ 38 (TT&A Bd., 1962), where it was found that there were differences between the goods, both in character and uses, that the trade channels differed, that the means of production were different and that the classes of purchasers were different. Here the goods are bakery products which can be made by the same producers, which are sold in the same type of retail outlets and which are or can be purchased by the same person.

We express no doubt as to our conclusion that there is a likelihood of confusion and therefore do not find the registrant's consent or its opinion persuasive in this matter.

Appellant argues that In re National Distillers & Chemical Corp., 297 F.2d 941, 49 CCPA 854, does control in the present circumstances. Certainly there is nothing in *National Distillers* to justify the controlling effect appellant seeks here. There a majority[1] expressly found the competing marks and goods to be different, stating:

> We shall first consider whether the differences in the marks and in the goods are such that confusion or mistake or deception of purchasers is likely. The marks MARQUÉS DEL MÉRITO and MERITO do not look alike, sound alike nor evoke the same psychological responses. Wines and rum are goods whose differences are clearly recognized by the purchasers thereof. These differences are sufficient to raise a doubt as to likelihood of confusion, mistake or deception of purchasers arising from the common use of the word MERITO. Under these circumstances, we think the alleged agreements between applicant

---

1. Perhaps more accurately described as a nominal majority since one judge did not participate, another judge concurred with opinion, and another judge dissented with opinion.

and the owner of the reference registration are of evidentiary value.

It may well be that individual agreements regarding use and registration of trademarks are of "evidentiary value," as the board here has demonstrated. However, in enacting Section 2(d) of the Lanham Act [2] Congress clearly charged the Patent Office with the initial responsibility of determining whether certain trademarks are entitled to *registration,* as distinguished from use, within the scope of that section. To hold that the present consent to *register* should control would be to allow individuals to take the law in their own hands, thus usurping the responsibility that Congress has placed in the Patent Office. Should there be any language in *National Distillers* intimating that individuals have such rights regarding *registration* of trademarks, then to that extent that decision is hereby expressly overruled. See also In re Wilson Jones Company,[3] 337 F.2d 670, 52 CCPA 805.

The decision is affirmed.

Affirmed.

RICH, Judge (dissenting).

The majority has no basis for disparaging the opinion for the court in *National Distillers* as that of a "nominal" majority. The majority in that case consisted of Judge Smith, who wrote the opinion, Judge Kirkpatrick, who joined it, and myself.[1] I have just reread my concurring opinion of six years ago and there is not a word in it in conflict with Judge Smith's opinion with which I then fully agreed, as I do now. My only purpose in writing a concurring opinion was, as I stated, to examine the Patent Office

Solicitor's concepts, as there stated in his brief, about the Patent Office duty to protect the public by *refusing* registrations and to show that this not only does not protect the public but actually interferes with the normal protection of the public through the enforcement of private rights.

The same reasoning, some of which appellant quotes in its brief, is equally applicable here.

Lest I again be relegated to a nonparticipating status for lack of an explicit statement, I declare by present full agreement with Judge Smith's dissenting opinion herein.

In no event can I subscribe to an opinion which speaks of "expressly" *overruling* a prior decision of this court on a hypothetical or "if" basis that it *may* contain "language" "intimating" something or other. We know what is in our *opinions.* We can say whether or not we will or will not follow *decisions* as precedents. Overruling is serious business, not to be confused with distinguishing prior cases or the reasoning in prior opinions. Judge Smith has pointed out how it upsets the business community. The *decision* in *National Distillers* stands. "Overruled" is not a term to be bandied about in a casual manner.

For reasons I stated in the *National Distillers* case, I think we must not be so literal minded about section 2(d) of the Trademark Act of 1946 that we defeat its basic purpose, as the majority is doing here. It follows the reasoning of the board which categorized the goods of both parties as "bakery products." To leave it at that is to leave a false impression and to ignore the evidence in the

---

2. Trademark Act of 1946.

3. There the court held:

    While we have held that an agreement by the owner of a reference registration giving express consent to *register* should have an important persuasive effect in determining registrability, see In re National Distillers & Chemical Corp., 297 F.2d 941, 49 CCPA 854, that situation is not here. The agreement here conveys only the right to *use* the *reference* mark. We

do not see that this agreement supports the inference that the owner of the reference thought confusion between the marks *sought to be registered* and the *reference* mark to be unlikely. Moreover, we do not feel that the inference, even if correct, is persuasive.

1. There was a lone dissent in that case, since Judge Martin did not participate, by the author of the present majority opinion.

affidavit of Mr. Boote, the food industry expert employed by appellant, which points out the manufacturing and marketing differences respecting the *fresh* bakery products of the applicant and the *frozen* food techniques of production and distribution of the consenting registrant's frozen fruit pies and frozen cream pies.[2] It is these differences which support the affidavit form of consent (construed by the board to be a consent to both use and registration) by the owner of the reference registration in which the Vice President of that company expresses the view that confusion, deception, or mistake is unlikely.

The facts of this case are, I believe, such as to bring it clearly within the principles expressed by Judge Smith in the three-judge majority opinion in *National Distillers* as well as the further views of my concurring opinion therein. This calls for reversal.

SMITH, Judge, with whom RICH, Judge joins (dissenting).

On the record here, I respectfully dissent from the conclusion of the majority and disagree with some of the reasons stated by the majority in support of that conclusion.

In order to place this appeal in its proper perspective, it should be noted that, as an appellate court, we are charged by Congress with the responsibility to "hear and determine" an appeal from a decision of the Trademark Trial and Appeal Board "on the evidence produced before the Patent Office." The statute requires that our decision shall be confined to the points set forth in the reasons of appeal. 15 U.S.C. § 1071. We, therefore, are required to determine whether, *on the record below,* the board erred in affirming the examiner's refusal to register.

To arrive at that determination, we must decide, as a matter of law, under section 2(d) of the Trademark Act of 1946 and on the basis of the record made below, whether appellant's mark so resembles the cited registration as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive. 15 U.S.C. § 1052 (d).

While this restatement of our responsibility under the applicable statutes is somewhat elementary, it is necessary in placing this dissent in proper perspective.

I disagree with the majority in its eroding of In re National Distillers & Chemical Corp., 297 F.2d 941, 49 CCPA 854 (1962).[1] In my opinion, *National Distillers* is a proper statement of the law, notwithstanding footnote 1 of the majority opinion and the discussion accompanying footnotes 2 and 3 therein.

The introduction to section 2 of the Trademark Act of 1946 states that "No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration" unless one or more of the grounds enumerated in subsections (a) through (e) are applicable. Under those provisions, the Commissioner of Patents is charged with the responsibility of refusing registration when he believes, as the arbiter of the evidence before the Patent Office, that registration is proscribed. See In re Apparel, Inc., 366 F.2d 1022, 54 CCPA 733 (1966); cf. In re Fleet-Wing Corp., 188 F.2d 476, 38 CCPA 1039

---

2. The description in the registration (which is not of record) appears to be "frozen fruit and cream pies," an ambiguous statement. The record shows, however, that two kinds of pies are intended, rather than frozen fruit on the one hand and cream pies on the other. It is not clear to me that frozen pies would ordinarily be classed as "bakery products" to be obtained from a bakery. I would expect them to come from a manufacturer of frozen foods and to be found in a freezer, not with the baked goods. That is what the record shows to be the method of distribution.

1. Note, 76 Harv.L.Rev. 1691 (1963); see generally, Developments in the Law: Trade-Marks and Unfair Competition, 68 Harv.L.Rev. 814 (1955).

(1951); In re Laskin Bros., Inc., 146 F.2d 308, 32 CCPA 820 (1944).[2]

Here, the applicant has applied for registration of "COUNTY FAIR" for *"fresh* bread, cake and sweet goods, namely, cinnamon sticks, sweet rolls and assorted pastries." [Emphasis added.] The cited registration, "COUNTY FAIR" for "frozen fruit and cream pies," initially provides sufficient evidence to overcome the applicant's *prima facie* right to registration. If the applicant had produced no additional evidence, bearing on the issue of whether confusion would be likely, the cause here would require an affirmance. But the applicant here proceeded to build a strong case from the evidentiary standpoint.[3]

There are several approaches which an applicant for registration may take in seeking to overcome a refusal to register his mark based on a reference registration. Here because the marks are identical, the applicant was restricted to showing that the goods were in fact different, from which the legal conclusion under section 2(d) could be drawn that confusion was not likely. He first argued that a meaningful factual difference exists between the "frozen" character of the registrant's goods and the "ready-baked" or "fresh" attributes of applicant's goods. When unsupported argument on this issue proved unsuccessful, applicant provided the affidavit of Mr. Edward K. Boote, its Director of Marketing. As a factual showing of differences between fresh and frozen products, I think that the affidavit should have been given some weight.

The examiner, however, adhered to his position of refusing to register, choosing, in his final action, to ignore entirely the affidavit and its factual showing.

In a further attempt to overcome the final refusal to register, applicant produced and made of record the registrant's consent which applicant considered to give it the right to use and register the mark in issue. The evidence as to that consent is an affidavit which states:

E. S. Hartwick, being first duly sworn, deposes and says:

1. He is Vice President of the Carnation Company, a Delaware corporation having its principal office at Carnation Building, Los Angeles, California.

2. Said Carnation Company is the owner of United States Trade-Mark Registration No. 607,398, issued June 14, 1955.

3. The said Carnation Company hereby *consents,* in the matter of the above-entitled trade-mark application, and otherwise, *to the use by* the Continental Baking Company of the trademark "COUNTY FAIR" for fresh bread, cake and sweet goods.

4. The Carnation Company, being engaged in and thoroughly familiar with the business of food production and distribution, *considers said goods mentioned in paragraph 3 above to be in a different category* from frozen fruit and cream pies, which are the goods mentioned in the said Registration No. 607,398, and *believes that the use* by Continental Baking Company to which consent is above given *is in no way likely to cause confusion or mistake or to deceive.* [Emphasis added.]

---

2. See Derenberg, The Patent Office as Guardian of the Public Interest in Trade-Mark Registration Proceedings, 14 Law & Contemp.Prob. 288, 31 J.P.O.S. 647 (1949).

3. In American Drill Bushing Co. v. Rockwell Mfg. Co., 342 F.2d 1019, 1021–1022, 52 CCPA 1173, 1176 (1965), this court noted:
   It is fundamental, however, that identity or similarity of the marks alone is not enough to be conclusive of a likelihood of confusion. We must also consider the nature of the goods and the mark as applied thereto, the channels of trade, the class of purchasers, and other showings, such as, but not exclusively limited thereto, third party registrations, and absence of actual confusion.

Appellant argued that all of the evidence of record brought the case within the holding of *National Distillers,* supra. I agree.

In *National Distillers,* we found differences in the goods *and* differences in the marks. We said, 297 F.2d at 943, 49 CCPA at 856:

> We shall first consider whether the differences in the marks and in the goods are such that confusion or mistake or deception of purchasers is likely. The marks MARQUÉS DEL MÉRITO and MERITO do not look alike, sound alike nor evoke the same psychological responses. Wines and rum are goods whose differences are clearly recognized by the purchasers thereof. *These differences are sufficient to raise a doubt as to likelihood of confusion, mistake or deception of purchasers arising from the common use of the word MERITO. Under these circumstances,* we think the alleged agreements between applicant and the owner of the reference registration are *of evidentiary value.* [Emphasis added.]

I disagree with the majority that *National Distillers* stands for any such narrow proposition as it extracts from the opinion to state:

> To hold that the present consent to *register* should control would be to allow individuals to take the law in their own hands, thus usurping the responsibility that Congress has placed in the Patent Office. Should there be any language in *National Distillers* intimating that individuals have such rights regarding *registration* of trademarks, then to that extent that decision is hereby expressly overruled.

While consents to register cannot *control* in all instances, they definitely should be "of evidentiary value" as bearing on the factual basis for supporting a legal conclusion as to likelihood of confusion. We here should be concerned with the legal sufficiency of all of applicant's proofs (including the consent) and nothing more and base our determination solely upon their sufficiency to support the legal conclusions required by the statute.

In In re Wilson Jones Company, 337 F.2d 670, 52 CCPA 805 (1964) we referred to consents to register as having an "important persuasive effect in determining registrability." However, we there considered proof of a mere right to use as not being sufficient to control on the issue of likelihood of confusion.[4] This decision is in accord with *National Distillers,* in considering the agreements between the parties as relevant evidence. As such, it is at odds with the majority here, for as I see it, the majority is unwilling to accord any evidentiary weight to the agreement between the prior registrant and the applicant on the issue of likelihood of confusion.

Certainly, where, as here, the *facts* of record support a finding of doubt as to likelihood of confusion, any properly admissible statement from the registrant asserting a belief that confusion is not likely, may well have the "important persuasive effect" to convince us to conclude, as a matter of law, that confusion is not likely. As *evidence on that issue,* it *must* be considered.

Thus, I believe that the majority decision here is not based on a logical interpretation of *National Distillers.* Though the marks here are identical, applicant's proofs raise a substantial

---

4. In *National Distillers,* the prior registrant's consent to the applicant to *use and register* the mark in issue was before the court. In *Wilson Jones,* however, only an agreement conveying the right to use was of record. We refused to *infer* that the consent to use the registered mark was probative evidence on the issue of whether confusion would be likely.

I regard consents to register as evidentiary. The consent need not, in my view, contain express language conveying a right to register, as long as the agreement, as here, contains language bearing on the factual bases necessary to determine the legal issue of likelihood of confusion.

*doubt* as to whether confusion would be likely. The consent filed by the registrant is sufficient additional evidence to tip the scales in favor of registration.

I also disagree with the approach of the majority in "overruling" language in *National Distillers,* if it is there at all. As a court, we ought to strive for clarity and stability in the law, especially so where our opinions are looked to as a guide for the actions of an administrative body, applicants for registrations, their lawyers, businessmen and other courts, cf. Field Enterprises Educational Corp. v. Grosset and Dunlap, Inc., 256 F.Supp. 382 (S.D.N.Y.1966). The legal propositions supporting *National Distillers* are clear; they were made clearer in *Wilson Jones.* The action of the majority here is a regression from the broad intent of Congress in enacting the Trademark Act of 1946 for the purpose of bringing stability into the Federal trademark law. At best, the present majority opinion will cause considerable uncertainty as to the evidentiary proofs required to support a right to register where relative certainty previously prevailed.

A review of the case law, particularly opinions of the board, indicates that consents to register are quite commonly presented, are considered as relevant evidence, but are not always persuasive as to a right to register a trademark. This is as it should be. A list of some of these decisions appears in the Appendix A to this opinion. Consents to use a registered trademark given by the owners of such registrations must be presumed to be the acts of reasonable men who are in a better position than either examiners or judges to testify as to the factual basis for determining the issue here.

Mindful then of the impact the majority dicta is sure to have in encouraging the substitution of mere legalistic speculation for evidence of facts in such cases as the present, I find no proper

purpose served in "overruling" anything in *National Distillers.* Indeed, as Professor Derenberg commented on *National Distillers:* [5]

Although the Chief Judge dissented, it may well be expected that under the authority of this important precedent, the Patent Office will now show greater latitude and cooperation in accepting letters of consent and will resolve any doubt in borderline situations in favor of the applicant, such as is the practices [sic] in most other countries, including Great Britain, where in situations of this sort the public record may carry a notice, "By Consent."

Finally, similar to the situation in *National Distillers,* I think the agreements here relied upon by the appellant are limited to certain conditions which are expressly contained in that consent. As such, they are limited or restricted consents. Under section 1(a) (1) of the Trademark Act of 1946, 15 U.S.C. § 1051, appellant should be required to state these limitations and restrictions as exceptions to a claim of an exclusive right to use. I hardly think that the registrant would permit simultaneous use of the same mark for the identical goods for which he has already obtained registration.

Thus, I would reverse the decision of the board and remand the case for further proceedings consistent with the views herein expressed.

*Appendix A*

Some recent decisions in which the consent of the registrant was of record and the conclusion that confusion is likely was reached: In re Robert Hall Clothes, Inc., 155 USPQ 754 (TTAB 1967); In re Electro-Voice, Inc., 148 USPQ 616 (TTAB 1966); Monarch Mufflers, Inc. v. Goerlich's Inc., 148 USPQ 20 (TTAB 1965); In re Variety Supply Co., 137 USPQ 387 (TTAB 1963); Country Tweeds, Inc., v. Joseph & Feiss Co., 136 USPQ 314 (TTAB 1962); St. Regis Paper Co. v. Malanco,

5. The Fifteenth Year of Administration of the Lanham Trademark Act of 1946, 134 USPQ No. 6, Part II, August 6, 1962.

Inc., 136 USPQ 88 (TTAB 1962); Central West Oil Corp. v. Continental Oil Co., 135 USPQ 469 (TTAB 1962); In re W. H. Barber Oil Co., 135 USPQ 372 (TTAB 1962) (involving identical marks).

Other recent decisions in which the consent of the registrant was of record and the conclusion was reached that confusion would not be likely: In re Executone, Inc., 153 USPQ 648 (TTAB 1967) (involving identical marks); In re Transitel Corp., 149 USPQ 794 (TTAB 1966); In re A. C. Gilbert Co., 135 USPQ 38 (TTAB 1962); In re Electro-Vox, Inc., 134 USPQ 463 (TTAB 1962).