**SIMMONDS AEROCESSORIES, Limited,**
**Appellant,**

v.

**ELASTIC STOP NUT CORPORATION**
**OF AMERICA.**

**No. 12466.**

United States Court of Appeals
Third Circuit.

Argued April 22, 1953.

Decided July 16, 1953.

As Amended Aug. 8, 1953.

See also 158 F.Supp. 277.

Joseph A. Weisman, Newark, N. J. (Weisman & Freedman, Newark, N. J., Joseph A. Weisman, William A. Ancier, Newark, N. J., on the brief), for appellant.

Hamilton Hicks, New York City (Riker, Emery & Danzig, T. McCurdy Marsh, Newark, N. J., Curtis F. Prangley, Chicago, Ill., on the brief), for appellee.

Before MARIS, KALODNER and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

The plaintiff, Simmonds Aerocessories, Ltd., appeals from a judgment entered in the District Court for the District of New Jersey, upon the motion of the defendant, Elastic Stop Nut Corporation of America, dismissing the first count of its complaint. Jurisdiction was based upon diversity of citizenship and the trademark laws of the United States. The complaint consists of two counts. From the complaint and the affidavits submitted to the district court it appears that the plaintiff, a British limited company, and the defendant, a New Jersey corporation, manufactured and marketed a similar product, a metal nut known as an "elastic stop nut" which contains a red fibre insert possessing elastic properties which enable it to be gripped securely to an accompanying bolt. Because of its locking qualities this product is extensively used in the manufacture of metal products and is indispensable to the aircraft and automotive industries. Both parties acquired licenses from the inventor, Ture Gustav Rennerfelt; the defendant in 1927 was licensed to manufacture and sell in the United States and certain other countries of North and South America, and the plaintiff in 1932 was licensed to manufacture and sell in other parts of the world. The patents and licenses have expired and the right to manufacture this product is now in the public domain. During World War II the elastic stop nut manufactured by the plaintiff was sold almost exclusively as war material and substantial quantities were imported into Canada and the United States, principally for aircraft purposes. Since the end of the war and up to the present time the plaintiff has marketed this product in Canada. In 1953 the plaintiff, desiring to expand the North American market for its product, sold and distributed it in the United States under its own name as its product and in packages so labelled.

On June 1, 1954 the defendant addressed a letter to the plaintiff stating:

"We have been informed that stop nuts of your manufacture have been imported into the United States. The sample which we have received has a red fiber locking collar. A red collar has been one of the distinctive marks of our product during the entire period of our manufacture which began in 1927.

"In this connection we call your attention to the decision in Elastic Stop Nut Corporation of America v. Greer [D.C.] 62 F.Supp. 363. In the court's decision in that case Mr. Greer was enjoined in the use of a red fiber collar in his product. We

should like to know that your product when shipped to this country will not be identified by the red locking collar."

To this letter the plaintiff on July 16, 1954 replied as follows:

"Thank you for your letter of the 1st instant drawing our attention to the case of ESNA v. Greer, in connection with the above.

"We have delayed replying in order to obtain the opinion of a reliable American attorney as to our legal position vis a vis any rights which may appear to be accorded to you by the Greer case.

"We have now received advice and opinion that the circumstances surrounding the import of our red insert lock nuts into the United States are clearly distinguishable from those involved in your action against Greer, and that the judgment in that case cannot be held to affect us.

"We await your further comments, but hold ourselves free in the meantime to continue to export standard Simmonds red fibre nuts to the U.S.A. May we also add that we do not identify our Fibre Elastic stop nut either in advertisements, trade mark, letter headings, etc. by reference or otherwise to a *red* collar."

Shortly thereafter, on November 3, 1954, the defendant applied to the United States Patent Office for the registration of a trademark giving it the exclusive use of a red insert for elastic stop nuts. The plaintiff had no knowledge of this application and continued to export its product to this country. On September 6, 1955 the defendant's application was granted and the design was registered. Thereafter the defendant, under Section 42 of the Lanham Trade-Mark Act, 15 U.S.C.A. § 1124, caused the trade-mark registration to be recorded in the Department of the Treasury and facsimiles of its trade-mark were transmitted to United States ports of entry. On Octo-

ber 4, 1955 the plaintiff shipped 143 drums of its product to the United States for sale and distribution which arrived at New York on October 19, 1955 and were seized by the Collector of Customs at that port. The plaintiff, to prevent a forfeiture, withdrew its shipment from customs, it was returned to England, and the plaintiff has ever since been thus prevented from shipping its product to the United States for sale, use and distribution. The complaint asserts that the defendant has no exclusive or proprietary interest in the color red or the design or shape of the elastic stop nut and is not entitled to the protection of the United States trade-mark laws, that the registration was fraudulently procured for the purpose of unlawfully suppressing and stifling competition and to prevent the plaintiff from importing its elastic stop nut into the United States and selling it in competition with the defendant's product and that unless the trade-mark registration is cancelled and the embargo lifted, the damage to the plaintiff will be substantial and irreparable. The relief sought by the plaintiff in the first count was, as summarized by the district court, 154 F.Supp. 615, 617, as follows:

"(1) A declaratory judgment

"(a) that plaintiff has the right to manufacture and import its product;

"(b) that defendant never had any monopoly of the red color for its fiber insert;

"(c) that defendant had no lawful right to procure the trade mark registration; and

"(d) that said registration is void;

"(2) An injunction against interfering with plaintiff's sale of its elastic lock nuts in the United States;

"(3) A cancellation of defendant's registration;

"(4) A directive to defendant to notify the Collector of Customs that defendant removes all objection and

consents to the importation of plaintiff's product;

"(5) An injunction against the assertion of any claim that plaintiff's product infringes that of the defendant;

"(6) An adjudication that defendant's registration was procured by false or fraudulent representation; and

"(7) Compensatory and punitive damages."

The second count of the complaint incorporates the allegations of the first count by reference, charges that the acts and omissions therein set forth constituted unfair competition with plaintiff's business, and seeks damages in the sum of $1,000,000.

■ The defendant filed motions which, inter alia, so far as pertinent here, were: (1) a motion to strike the first count of the complaint for lack of jurisdiction of the subject matter under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the trade-mark laws, 15 U.S.C.A. § 1051 et seq.; (2) a motion to strike paragraph 16 of the first count of the complaint for failure to particularize the charge of fraud; and (3) a motion to strike the entire complaint for failure to state a claim upon which relief could be granted. The district court granted the motion to strike the first count on the ground that it failed to disclose jurisdiction in the district court over the subject matter and failed to state a claim upon which relief could be granted, holding that plaintiff's only recourse was by direct attack upon the validity of the trade-mark in the form of a proceeding for its cancellation before the Commissioner of Patents under section 14 of the Lanham Trade-Mark Act, 15 U.S.C.A. § 1064. 154 F. Supp. 615.

The plaintiff moved for reargument and for leave to amend the first count by alleging fraud with particularity in a new paragraph 9(a). Further affidavits, containing excerpts from defendant's application for registration of its trade-mark, were submitted disclosing that on November 16, 1954 the defendant had petitioned the Commissioner of Patents to make special its application of November 3d and to advance his consideration on the ground that plaintiff's product was being imported into the United States in direct competition with the defendant's product to defendant's injury, and that "All attempts to persuade this British competitor to refrain from further infringement of Applicant's trade-mark have been fruitless." On December 3, 1954 registration of defendant's trade-mark was refused on the ground that the use of red color constituted an ornament rather than a trade-mark and that the decision of the district court in Elastic Stop Nut Corporation of America v. Greer, D.C.Ill.1945, 62 F.Supp. 363, did not apply. The defendant, in an amended application of May 11, 1955, submitted other material in support of its original application including a complete copy of findings of fact and conclusions of law of the district judge in the Greer case. Registration was granted on September 6, 1955. Under date of October 14, 1955 the defendant wrote to the plaintiff as follows:

"There are enclosed photostatic copies of documents having to do with protection afforded us by United States Trade Mark Law. You will note that our "Red Collar" Trade Mark, identified by 611.674. has been recorded with the Commissioner of Customs of the United States of America.

"The real purpose of this action on our part is to prevent your company and possibly others from shipping self-locking nuts with red collars into the United States market and to prevent confliction in the minds of customers in the States who are users and have been users of self-locking nuts made by this company.

"Please note that customs officials at any point of entry have the right to seize articles simulating those

described under Trade Mark No. 611.674."

The district court, after the reargument, filed an order adhering to its original opinion and findings of fact and conclusions of law. The court denied the plaintiff's motion to amend the first count of its complaint by the insertion of a new paragraph on the ground that the proposed amendment would not serve to validate the complaint, dismissed the first count of the complaint without prejudice, and reserved to the plaintiff the right to amend paragraph 16 of the complaint as incorporated in the second count to conform to the requirements of Fed.Rules Civ.Proc. Rule 9(b), 28 U.S.C., and, pursuant to Rule 54(b), entered a final judgment dismissing the first count. This appeal followed.

The defendant contends at the outset that the appeal is premature. Its argument is that the two counts of the complaint are so related as to be inseparable. We do not agree. It is plain that the judgment of the district court was properly entered under Rule 54(b) and that it terminated the action with respect to the claims asserted in the first count. This being so, the decision of the district court as to these matters was final. Reeves v. Beardall, 1942, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478; Sears, Roebuck & Co. v. Mackey, 1956, 351 U.S. 427, 76 S.Ct. 895, 100 L. Ed. 1297; Cold Metal Process Co. v. United Engineering & Foundry Co., 1956, 351 U.S. 445, 76 S.Ct. 904, 100 L. Ed. 1311; Collins v. Metro-Goldwyn Pictures Corporation, 2 Cir., 1939, 106 F.2d 83; Bendix Aviation Corp. v. Glass, 3 Cir., 1952, 195 F.2d 267, 38 A.L.R.2d 356. Moreover, since the first count sought an injunction which was denied by its dismissal, the judgment would be appealable even if it were merely interlocutory. 28 U.S.C. § 1292(1).

We turn, then, to consider the plaintiff's contentions that the district court erred in holding that it had no jurisdiction of the subject matter of the first count and that no claim was asserted therein upon which relief could be grant-ed. The court's action was based on its conclusion that an actual controversy was not alleged in that count nor a claim asserted therein upon which relief could be granted under the Declaratory Judgment Act. The plaintiff's position is that the district court was wrong in concluding, as it did, that merely because the defendant never directly charged the plaintiff with infringement coupled with a threat of litigation, no actual controversy was shown.

This court has emphasized that the Declaratory Judgment Act should have a liberal interpretation because it is remedial in character. Dewey & Almy Chemical Co. v. American Anode, 3 Cir., 1943, 137 F.2d 68, certiorari denied 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454. Whether there is an actual controversy within the meaning of the Act is a question which turns on the facts of each individual case. In Maryland Casualty Co. v. Pacific Coal & Oil Co., 1941, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, the Supreme Court pointed out that "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Thus the fundamental test is whether the plaintiff seeks merely advice or whether a real question of conflicting legal interests is presented for judicial determination. In Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 1937, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617, the Supreme Court observed that "Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary

proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. * * * And as it is not essential to the exercise of the judicial power that an injunction be sought, allegations that irreparable injury is threatened are not required."

Bearing these principles in mind we turn to the facts here alleged to see whether the plaintiff has asserted an interest adverse to that of the defendant. It needs but little discussion to demonstrate that it has done so. For the plaintiff manufactures the same product as the defendant, it desires to sell its product in the United States, and the defendant through the use of its trade-mark registration has prevented plaintiff from doing so and has thereby secured a monopoly in this market. Moreover the defendant has stated in the Patent Office proceedings that the plaintiff infringes its rights in its product and has so informed the plaintiff by letter. It thus being clear that the plaintiff has brought into the arena a legal dispute, a justiciable controversy, it only remains to consider whether the plaintiff must also show that the defendant has actually made a direct threat of litigation. Here the defendant, having eliminated the possibility of plaintiff's product entering the United States in competition with its own product by registering its trade-mark and filing facsimiles at all ports of entry, has rendered unnecessary recourse to litigation for that purpose. It has been held, however, that it is not essential that there be a direct threat of litigation in order to invoke the Declaratory Judgment Act. It is sufficient if such a threat is implicit in the attitude of the defendant as expressed in circumspect language contained in a letter, E. W. Bliss Company v. Cold Metal Products Company, D.C.Ohio 1955, 137 F.Supp. 676, 678, or if the plaintiff has notice that the defendant asserts that there is or will be an infringement. Treemond Co. v. Schering Corporation, 3 Cir., 1941, 122 F.2d 702, 705; Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 2 Cir., 1952, 200 F. 2d 876, 878. In E. W. Bliss Co. v. Cold Metal Process Co., 6 Cir., 1939, 102 F.2d 105, an actual controversy was held to exist although it was evident that the patentee was exerting every effort to avoid entanglement in litigation with the particular alleged infringer seeking the *declaration*. In Dewey & Almy Chemical Co. v. American Anode, supra, 137 F.2d 68, 71, the fact that the defendant had never formally asserted a claim of infringement or made any direct threat to sue the plaintiff was held not conclusive of the problem and we stated that "an 'actual controversy' may exist even though, for one reason or another, the patentee is disabled from maintaining any action against the particular alleged infringer seeking the declaration." See, also, Aralac, Inc., v. Hat Corporation of America, 3 Cir., 1948, 166 F.2d 286, 291–293; Welch v. Grindle, 9 Cir., 1957, 251 F.2d 671, 678. We conclude that the plaintiff has stated an actual controversy within the meaning of the Declaratory Judgment Act and since the plaintiff had notice of the defendant's adverse position, it was not necessary that an actual threat of infringement and litigation be shown.

This brings us to the question whether the court had jurisdiction of the defendant's registered trade-mark, the subject matter of the action. Sections 37 and 38 of the Lanham Trade-Mark Act provide that:

"Sec. 37. In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Commissioner, who shall make appropriate entry upon the records of the Patent Office, and

shall be controlled thereby." 15 U.S.C.A. § 1119.

"Sec. 38. Any person who shall procure registration in the Patent Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof." 15 U.S.C.A. § 1120.

The district court held that the plaintiff's only recourse under the circumstances was to proceed in the Patent Office for cancellation of defendant's trade-mark registration, pursuant to Section 14 of the Act, 15 U.S.C.A. § 1064. However, Section 14, which provides for cancellation proceedings in the Patent Office, and section 37, which we have quoted above, are concurrent remedies, not mutually exclusive. Corning Glass Works v. Robertson, 1933, 62 App.D.C. 130, 65 F.2d 476, certiorari denied 290 U.S. 645, 54 S.Ct. 63, 78 L.Ed. 559. See, also, Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 1942, 129 F.2d 848; Judson Dunaway Corporation v. Hygienic Products Co., 1 Cir., 1949, 178 F.2d 461, certiorari denied 339 U.S. 948, 70 S.Ct. 802, 94 L.Ed. 1362; Nancy Ann Storybook Dolls v. Dollcraft Co., 9 Cir., 1952, 197 F.2d 293, 295–296; Bascom Launder Corp. v. Telecoin Corp., 2 Cir., 1953, 204 F.2d 331, 335, certiorari denied 345 U.S. 994, 73 S.Ct. 1133, 97 L.Ed. 1401. Congress has provided that all questions in respect to a registered trade-mark may be determined in one proceeding, thus preventing vexatious and harassing litigation as well as saving time, expense and inconvenience to the parties and to the courts and Patent Office tribunals. The plaintiff, having asserted an actual controversy, is entitled to have the validity of the defendant's trade-mark registration determined in this action under section 37 of the Lanham Trade-Mark Act as well as its claim for damages under section 38 of that Act, and the district court has jurisdiction under section 39 of the Lanham Trade-Mark Act, 15 U.S.C.A. § 1121, as well as under sections 1331 and 1332 of title 28, United States Code, to give it the relief to which it may prove itself to be entitled.

The question was raised by the defendant in the district court as to whether the plaintiff has failed to state a claim of fraud upon which relief can be granted. We do not, however, express an opinion upon this question since it is not before us on this appeal. We merely observe that inasmuch as we have concluded that the court's action in dismissing the first count was erroneous, the plaintiff upon remand will be entitled under Rule 15 to amend the complaint so as to cure this defect if it can and if the defect in fact exists.

The judgment of the district court will be reversed and the cause will be remanded to the district court for further proceedings not inconsistent with this opinion.