The GILLETTE COMPANY, Appellant,

v.

"42" PRODUCTS LTD., Inc., d.b.a. Executive Toiletries, Ltd., Appellee.

No. 25223.

United States Court of Appeals,
Ninth Circuit.

Dec. 14, 1970.

Rehearing Denied Feb. 11, 1971.

Wm. W. Rymer (argued), Charles C. Winchester, Philip Colman, Maxwell Breslau, Boston, Mass.; Miketta, Glenny, Poms & Smith, Los Angeles, Cal., for appellant.

W. D. Sellers (argued), of Sellers & Brace, Pasadena, Cal., for appellee.

Before BARNES, MERRILL and CARTER, Circuit Judges.

BARNES, Circuit Judge:

Appellant Gillette appeals from the denial of its motion to dismiss the appellee's three causes of action for lack of subject matter jurisdiction. Because the trial court was of the opinion that this denial involved controlling questions of law as to which there are substantial grounds for differences of opinion and that an immediate appeal from its order might materially advance the ultimate termination of this litigation, the case was certified for appeal to this Court pursuant to 28 U.S.C. § 1292(b).

The present dispute began in 1962 when "42" filed an application to register the mark EXECUTIVE for after-shave lotion, pre-shave lotions, cologne and hair dressings. Gillette opposed this registration on several grounds, *inter alia,* its sale of razors, after-shave lotion, and men's deodorants; its ownership of the mark EXECUTIVE as applied to razors and blades, and its own prior registration of the mark for safety razors. Its Notice of Opposition further alleged that the resemblance between the marks was likely to cause confusion and that "42" was not "entitled to said registration or to the use of the mark * * * for after-shave lotions, pre-shave lotions or cologne."

The Patent Office Trademark Trial and Appeal Board (herein T.T.A.B.) dismissed the Opposition on the ground that "42" was entitled by assignment to the benefit of its assignor's use in 1945 of EXECUTIVE on shaving lotions and that likelihood of confusion should be measured as of that date rather than some later one at which the public was more accustomed to seeing common sources of razors and lotions. Gillette Co. v. "42" Products Ltd., Inc., 149 U.S. P.Q. 149 (T.T.A.B., 1966)

On Gillette's appeal to the Court of Customs and Patent Appeals (herein C.C.P.A.) pursuant to 15 U.S.C. § 1071 (a) (1) that court concluded that the T.T.A.B. erred in its determination of "42's" date of first use, found that the proper date was no earlier than 1957, and remanded to the T.T.A.B. to determine the likelihood of confusion in light of this holding, i. e. in 1957. Gillette Company v. "42" Products Ltd., Inc., 396 F.2d 1001, 55 C.C.P.A. 1347 (C.C.P.A., 1968). On remand, the Board neither invited nor permitted further evidence. It found that by 1957, there would have been a continuing likelihood of confusion as to source with resulting damage to *Gillette* and sustained the opposition. "42" then filed a civil action pursuant to 15 U.S.C. § 1071(b) (1) which is now the subject matter of this appeal.

In its complaint, appellant "42" sets forth three alleged causes of action. The first cause of action is an appeal from the adverse decision of the T.T.A.B., and seeks an order directing the Commissioner of Patents to dismiss Gillette's opposition and to grant "42" its registration. The second cause of action seeks cancellation of a trademark registration owned by Gillette. Finally, the third cause of action seeks a declaratory judgment that Gillette has no right to use the mark on cosmetics, and has no right to interfere with its use by "42" in such manner. The District Court denied Gillette's motion to dismiss the entire complaint for lack of subject matter jurisdiction, and made the appropriate certification with respect to immediate appeal.

1. *The First Cause of Action (Appeal from T.T.A.B.).*

Appellee Gillette contends that the District Court lacks subject matter jurisdiction under § 1071 because the first appeal to the C.C.P.A. constituted an election of one of the alternative remedies permitted by that section. The dispute arises from a rather unique dual system of remedies for an appeal from a decision by the Patent Office. Section 1071, which applies to trademark controversies, mirrors patent appeals in §§ 141 and 146 of 35 U.S.C. They allow a party who is dissatisfied with a decision by a Patent Office Board to appeal either to the C.C.P.A. or by means of a civil action in a district court. The complex historical evolution of the provisions for patent review are traced at length in Hoover Co. v. Coe, 325 U.S. 79, 84–87, 65 S.Ct. 955, 89 L.Ed. 1488 (1945). An appeal can only be taken to the C.C.P.A. by mutual consent and an appeal taken to one court waives the right to appeal in the other.

Gillette argues that because "42" did not elect a civil action when Gillette was the dissatisfied party taking an appeal to the C.C.P.A., appellee "42" waived its right to bring a civil action in all further proceedings in this trademark registration dispute. "42" argues that

its earlier election was binding only as to the appeal from the first T.T.A.B. decision, and that it did not waive its right to make an election by appealing, when it was first a dissatisfied party, from the second T.T.A.B. decision.

The controversy centers over the proper interpretation of the term "decision" and "all further proceedings" in 15 U.S.C. § 1071. The relevant statutory language reads as follows:

"§ *1071: Appeal to courts—Persons entitled to appeal; Court of Customs and Patent Appeals; waiver of civil action; elections of civil action by adverse party; procedure.*

"(a) (1) [A] party to an opposition proceeding * * * who is dissatisfied with the decision of the * * * Trademark Trial and Appeal Board, may appeal to the United States Court of Customs and Patent Appeals thereby waiving his right to proceed under subsection (b) of this section: Provided, that such appeal shall be dismissed if * * * adverse party * * * files notice with the Commissioner that he elects to have all further proceedings conducted as provided in subsection (b) of this section. Thereupon the appellant shall * * * file a civil action under said subsection (b) of this section, in default of which the decision appealed from shall govern the further proceedings in the case.

"(4) The court shall hear and determine such appeal on the evidence produced before the Patent Office, and the decision shall be confined to the points set forth in the reasons of appeal. Upon its determination, the court shall return to the Commissioner a certificate of its proceedings and decision, which shall be entered of record in the Patent Office and govern the further proceedings in the case.

"(b) (1) Whenever a person authorized by subsection (a) of this section to appeal * * * is dissatisfied * * *, said person may, unless appeal has been taken to said Court of Customs and Patent Appeals, have remedy by a civil action * * *."

The bare statutory language seems to support appellee's contention but is not conclusive. "42" cites Tibbetts Industries, Inc. v. Knowles Electronics, Inc. (7th Cir. 1967), 386 F.2d 209, cert. denied 390 U.S. 953, 88 S.Ct. 1046, 19 L.Ed.2d 1146, which it claims is on all fours with this case. *Tibbetts* involves 35 U.S.C. § 141 and § 146, but, as we have noted, the remedies in trademark cases have generally followed review provisions in patent statutes. See American Steel Foundries v. Robertson, 262 U.S. 209, 211, 43 S.Ct. 541, 67 L.Ed. 953 (1923). In *Tibbetts, supra,* the Seventh Circuit in similar factual circumstances held that the waiver of a civil suit in the federal district court as to the first Board decision does not constitute a waiver as to the second decision as well. Gillette claims that *Tibbetts* is wrong and, even if correct is distinguishable from this case. We believe that the *Tibbetts* decision was correct. Appellant cites a number of cases (Appellant's Brief, pp. 6–10) which basically hold that once an election is made, the alternative remedy is waived, and that a decision by the court elected forecloses the issues because of *res judicata*. None of them go so far as to stand for the principle that the dissatisfied party cannot elect the other tribunal in an appeal from a second and later decision. The cited cases only teach that the two remedies are intended to be alternative and not successive. Once the dissatisfied party has chosen a path of appeal from a particular decision, he cannot seek to pursue the other. In addition, "42" in substance admits (Appellee's Brief, pp. 12–15) that the decision of the C.C.P.A. is *res judicata,* but only as to the one issue it decided, and that it is foreclosed as to all arguments it might have raised as to that one issue, i. e., that "42's" date of first use was no earlier than 1957.

Because Gillette has no case law squarely in its favor, it argues its posi-

tion on the basis of implied policies of judicial economy and "mandate". In its reply brief it also relies on a line of decisions in which Courts of Appeal in Federal Power Commission and N.L.R.B. cases have refused to assume jurisdiction over cases considered earlier by other circuits. This reliance demonstrates appellant's failure to comprehend why Congress, when it changed these two methods of appeal from successive to alternate remedies, retained both. The two methods are not merely alternative but *different* forms of review. In the C.C.P.A., the case proceeds upon a closed record and no new evidence is permitted. A civil action, however, provides the dissatisfied party with a trial *de novo* and the opportunity to present new evidence. By allowing an appeal from a second decision to a different reviewing body, "42" is getting an appeal in only one forum as Congress intended. It is merely choosing the forum whose procedures best fit its needs. In the first appeal, "42" was the prevailing party below and saw no need to invoke the special processes of the district court as opposed to appeal before the C.C.P.A. It had no way of knowing that it required a hearing in a civil action until it became the loser in the second decision. Congress gave alternative remedies because each possessed its own unique advantages. Congress also gave a party dissatisfied with a decision the certainty of an appeal to some reviewing forum. We find no reason why the dissatisfied party should be precluded from utilizing the processes of the forum best suited to his needs as long as the aid of only one forum is invoked. This Congressional policy appears sufficiently strong to outweigh balancing theories of judicial economy,

comity, and the effect of the C.C.P.A. mandate.

This interpretation fully protects the integrity of the earlier decision of the C.C.P.A. The district court must and will recognize that the C.C.P.A.'s opinion foreclosed all points which it decided. In addition, the requirement in § 1071 (a) (4) that the C.C.P.A.'s decision "govern all further proceedings" will also be satisfied. Here, as in *Tibbetts,* the district court may decide all of the remaining issues in deciding whether to grant "42's" requested registration order. While each party disputes the range of issues left undecided by the earlier C.C.P.A. decision, it is sufficient to say that there is a major issue which that opinion left open.[1]

When the C.C.P.A. made its finding of the 1957 date of use and reversed, it rejected the contentions of both parties and forced a reassessment of litigation strategy. "42" should not be penalized for failing to invoke processes which appeared unnecessary until the reversal by the C.C.P.A. Our reading of the *Tibbetts* decision confirms to us that the Seventh Circuit was motivated by the same considerations which lead to our decision. In their opinion, they quote extensively from the district court's excellent memorandum opinion which states that:

"The legislative history favors Tibbetts' right to sue here. The purpose of requiring an election of remedies was to foreclose redundant appeals. See Hoover Co. v. Coe, 325 U.S. 79, 86, 87, 65 S.Ct. 955, 89 L.Ed. 1488 (1945) Permitting Tibbetts to sue here on the Board's *second* decision does not proliferate appeals since there is certainly

1. The likelihood of confusion as of 1957 is certainly still an open issue and one upon which Appellee "42" may want to produce new evidence. This factual question was not at issue before the reversal by the C.C.P.A. After the remand, neither party was allowed to introduce new evidence before the T.T.A.B. This is therefore precisely the kind of situation envisioned by Congress where the different procedures of an action in equity before the district court are most necessary. In addition, "42" may also desire to introduce evidence on the issue of abandonment which "42" alleges, if it has not been foreclosed by the prior proceedings. We leave to the District Court the determination of whether this issue remains open.

a right to one more appeal in this case in some forum. The choice of this one precludes later resort to the C.C. P.A.

"Suit in federal district court was provided to save 'to litigants the option of producing new evidence in a court.' Hoover Co. v. Coe, 325 U.S. 79, 87, 65 S.Ct. 955, 89 L.Ed. 1488 (1945). The difficulty with Knowles' reading of the statute is evident in light of this provision. Following the first Board decision, Tibbetts saw no need to employ the special processes of this court. Tibbetts had won; evidence on questions of abandonment, suppression and concealment was unnecessary. Tibbetts' need for this forum became clear only later, after the Board's second decision; such a need could not have been discerned, except in pure prophecy, prior to that time. It is unreasonable to attribute to Congress the intention to force a litigant to make his choice not only on the basis of present facts but on uncertain future ones as well. The statute cannot be read to give a waiver made in one set of circumstances on one decision, binding effect in new, radically different circumstances on another decision. Congress must have thought that there were differences between the two available forums which would influence a litigant's choice in light of the status of his case. There is no reason to deny the benefits of that choice when conditions have changed and the entire decision-making process has begun again on new questions." *Tibbetts, supra,* 386 F.2d at pp. 212–213, citing Tibbetts Ind., Inc. v. Knowles Electronics, Inc., D.C., 263 F.Supp. 275, 277–278 (1966). (Emphasis added)

 We hold that in these circumstances, § 1071 permits a civil action in a federal district court and that the district court was correct in denying appellant's motion to dismiss for lack of subject matter jurisdiction over the first cause of action.

2. *The Second Cause of Action—* *(Cancellation).*

In light of our disposition of the first cause of action, we find, according to the agreement of the parties, that the district court possesses pendent jurisdiction. Consequently we venture no opinion as to whether 15 U.S.C. § 1119 provides an independent basis for jurisdiction.

3. *The Third Cause of Action—(Declaratory Judgment).*

The question whether the district court has subject matter jurisdiction is a close one. Although the applicable legal principles are well established, they are difficult to apply. The Third Circuit in Simmonds Aerocessories, Limited v. Elastic Stop Nut Corp., 257 F.2d 485, 489–490 (3rd Cir. 1958) has discussed the Declaratory Judgment Act, 28 U.S.C. § 2201, in these terms:

"This court has emphasized that the * * * Act should have a liberal interpretation because it is remedial in character. Dewey and Almy Chemical Co. v. American Anode, 3 Cir., 1943, 137 F.2d 68, certiorari denied 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454. Whether there is an actual controversy within the meaning of the Act is a question which turns on the facts of each individual case. In Maryland Casualty Co. v. Pacific Coal and Oil Co., 1941, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, the Supreme Court pointed out that 'The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' *Thus the*

*fundamental test is whether the plaintiff seeks merely advice or whether a real question of conflicting legal interests is presented for judicial determination.* In Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 1937, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617, the Supreme Court observed that 'Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. * * * And as it is not essential to the exercise of the judicial power that an injunction be sought, allegations that irreparable injury is threatened are not required.' " (Emphasis added.)

In addition, the Supreme Court noted in Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969) that the elements essential to relief must exist at the time of the hearing, not merely when the action was initiated.

In its attempt to establish that a real, actual and immediate controversy exists, "42" relies heavily on Gillette's allegations in its Notice of Opposition. Gillette claims that these are the standard boiler-plate recitations used in such notices, and that it has been held that "the filing of an opposition is not by itself a charge or warning of a future charge of infringement." Topp-Cola Company v. Coca-Cola Company, 314 F.2d 124, 126 (2d Cir. 1963) citing Merrick v. Sharp and Dohme, Inc., 185 F.2d 713 (7th Cir. 1950).

"42" suggests that in addition to the Notice of Opposition, Gillette officers have stated that the use of the trademark by "42" is "undesirable from the Gillette standpoint." The T.T.A.B. also found in its first decision that it seemed apparent that Gillette was attempting to reserve for itself the right to expand the use of the mark in the future. *Simmonds, supra,* noted that:

"It has been held * * * that it is not essential that there be a direct threat of litigation in order to invoke the Declaratory Judgment Act. It is sufficient if such a threat is implicit in the attitude of the defendant as expressed in circumspect language contained in a letter or if the plaintiff has notice that the defendant asserts that there is or will be an infringement." *Id.* at 490 (citations omitted).

We abstain from a decision at this time, on an interlocutory review. We feel the question is one more appropriate for review after a full record has been developed.

Our decision to allow the first two causes of action to stand indicates it would be desirable that all the closely related legal issues outstanding between the parties be decided in one suit.

The Interlocutory Order is affirmed.

JAMES M. CARTER, Circuit Judge (dissenting).

"42" filed an application to register the trademark Executive. Gillette filed an opposition. The trial board found "42" was entitled to date of first use in 1945 as a successor in business to Lander. On appeal to the C.C.P.A., Gillette Company v. "42" Products, Ltd. (C.C.P.A. 1968), 396 F.2d 1001, 55 C.C.P.A. 1347 reversed the decision of the board and held that "42" was entitled to a "date of first use no earlier than 1957" because the nunc pro tunc assignment by Lander was not intended to be an assignment of rights by the parties thereto and therefore "appellee ("42") is not entitled to claim Lander as its predecessor in interest."

The C.C.P.A. stated that the case was *"remanded* to the board for further proceedings consistent with this opinion." The remand was for a limited purpose, "to determine likelihood of confusion in the light of our holding" that "appellee is entitled to a date of prior use no earlier than 1957."

After the first hearing and decision by the trial board, Gillette, the aggrieved party, had an election. It elected to go to C.C.P.A. by appeal rather than commence an independent action in the district court. When Gillette appealed, "42" then had an election to (1) allow the C.C.P.A. to proceed with and conclude the appeal, or (2) to move to have the appeal dismissed and require Gillette to commence an action in the district court. The section, 15 U.S.C. § 1071, is difficult to read but the words "adverse party" clearly means "42", the non-aggrieved party in the posture of the case after Gillette had appealed to the C.C.P.A.

The cases uphold our reading of the statute that each party has an initial election. Westgate-Sun Harbor Co. v. Watson (1953), 92 U.S.App.D.C. 341, 206 F.2d 458; Chase v. Coe (1941), 74 App.D.C. 152, 122 F.2d 198. Nor does "42" dispute this reading of the statute.

We think that there should not be available to "42", the right to elect to commence proceedings in the district court, in view of its prior election not to have required dismissal of the appeal to the C.C.P.A. on the first go around. Such a rule would prevent two bites at the apple and would leave the entire case in the hands of C.C.P.A., a court ideally fitted by its expertise and experience for a complete decision in the matter. Such a rule would further the interests of judicial and litigant economy.

When Gillette appealed, "42", though then not aggrieved, could have forced the case to go the district court route. For good reasons of its own, it in substance allowed Gillette's choice of the C.C.P.A. route to stand. When a party to litigation succeeds in a trial court and the opponent takes an appeal, the appellee is foolhardy if he assumes he will succeed on appeal. If at this stage he foregoes an election to abort the appeal and have the case tried de novo in a trial tribunal, we must say he has made a binding election.

The C.C.P.A. did not send the single issue back for *retrial;* it sent it back for reconsideration on the record made. This explains why the trial board on remand neither permitted nor considered new evidence. Thus we think that, although the C.C.P.A. did not expressly retain jurisdiction to follow the remand, there was impliedly a retention of jurisdiction in the C.C.P.A.

We think that Tibbetts Industries, Inc. v. Knowles Electronics, Inc. (7 Cir. 1967), 386 F.2d 209, cert. denied 390 U.S. 953, 88 S.Ct. 1046, 19 L.Ed.2d 1146 was wrongly decided. However, it can be distinguished. In *Tibbetts* a patent interference was involved in which the issue was priority of invention. Tibbetts had two claims, (1) that Knowles had failed to prove reduction to practice before Tibbetts' filing date and (2) assuming Knowles had proved such earlier reduction to practice, he was deprived of any legal benefit because of his having "suppressed, abandoned or concealed the invention." The Board of Patent Interferences, the equivalent of the trial board in our case, found for Tibbetts on the first issue, i. e. that Knowles was not first in reduction to practice, but did not decide the second one. Knowles appealed to the C.C.P.A. Tibbetts failed to elect an action in equity. The C.C.P.A. found in favor of Knowles on the first issue, and reversed, thus making the second issue, "suppression" critical and remanded the case to the board for trial of this issue. Knowles v. Tibbetts (1965), 347 F.2d 591, 52 C.C.P.A. 1800. The C.C.P.A. stated, "Tibbetts has raised this issue throughout the interference and it must be decided. We thus remand for consideration of the 35 U.S.C. § 102(g) issue." [347 F.2d 591, 597].

Thus in *Tibbetts* the issue sent back was *not* for reconsideration on the record but for a trial of an issue that had not theretofore been tried. Viewed thus, the final result in Tibbetts Industries Inc. v. Knowles Electronics Inc., *supra, i. e.* that after a hearing before the trial board,

on this previously untried issue, Tibbetts might elect to file in the district court, clearly distinguishes our case from *Tibbetts*.

I would reverse as to the first cause of action.