FUENTES, Circuit Judge,
Dissenting.
The Majority concludes that, although 8 U.S.C. § 1252(f)(1) prohibits class action relief to “enjoin or restrain” immigration laws that regulate the detention of aliens convicted of crimes pending their removal, these jurisdictional limitations “do not encompass declaratory relief.” Maj. Op. at 1013. I disagree because a class action for declaratory relief has the effect of restraining the operation of laws, like 8 U.S.C. § 1226(c), that regulate pre-removal detention in immigration proceedings— precisely what the plain text of § 1252(f)(1) prohibits.
The statute at issue in this case provides as follows:
Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.
*1017 8 U.S.C. § 1252(f)(1) (emphases added). Although this provision bars class action suits to “enjoin or restrain” the immigration laws that regulate the detention of aliens subject to removal, Alii argues that, by its plain language, § 1252(f)(1) contains no prohibition on declaratory relief. He points out that the text does not use the term “declaratory” and that the section is entitled “Limit on Injunctive Relief.” I find these arguments unpersuasive. The real issue in this case is whether the word “restrain” bars a class claim for declaratory relief that would have the same practical effect as a class claim for injunctive relief. The Majority concludes that it does not because the word “restrain” refers to “temporary injunctive relief.” Maj. Op. at 1013-14. This is incompatible with the Majority’s conclusion that the word “restrain” should have a meaning different from the word “enjoin.” Maj. Op. at 1011. In my view, while the term “enjoin” refers to injunctive relief — including the temporary kind — the term “restrain” is a broad one that includes, among other things, declaratory relief. For this reason, I respectfully dissent.
The District Court rejected Alli’s interpretation of § 1252(f)(1) and, for several reasons, I find its analysis persuasive. First, because we endeavor to interpret statutes according to their “ordinary meaning,” Chapman v. United States, 500 U.S. 453, 462, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), I find dictionary definitions helpful. See Massie v. United States Dep’t of Housing and Urban Dev., 620 F.3d 340, 356 (3d Cir.2010) (noting that the dictionary is the “proper starting place for ascertaining the plain meaning of words”). In this case, those definitions comport with common-sense understanding. The word “restrain” means “restrict, limit, confine,” and “to hold back from action; keep in check or under control; repress.” The American Heritage Dictionary of the English Language 1487 (4th ed. 2009); Random House Webster’s Unabridged Dictionary 1642 (2d ed. 1998); The Compact Oxford English Dictionary 1573 (2d ed. 1989).
A class-wide declaratory judgment that aliens detained pursuant to § 1226(c) must receive an individualized hearing, as the Majority would allow, necessarily “restricts or limits” the Executive Branch’s implementation of that statute. I find nothing ambiguous about this result.[1] As the government argues, the term “restrain” is simply broad: Congress was so concerned about judicial second-guessing of its policy that it used a broad term in order to prevent it. See Diamond v. Chakrabarty, 447 U.S. 303, 315, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980) (“Broad general language is not necessarily ambiguous when congressional objectives require broad terms.”); In re Philadelphia Newspapers, LLC, 599 F.3d 298, 310 (3d Cir. *1018 2010) (“As a general matter of statutory-construction, a term in a statute is not ambiguous merely because it is broad in scope.”).
Alli’s class action petition for declaratory relief operates to “restrain” the operation of the law and is therefore barred by § 1252(f)(1)- In Younger v. Harris, the Supreme Court held that a plaintiff generally cannot file an action in federal court to enjoin a pending state prosecution. 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). A companion case, Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), recognized that allowing declaratory judgments in such cases would largely undermine Younger’s, holding. The Supreme Court explained that “the propriety of declaratory and injunctive relief should be judged by essentially the same standards.” Id. at 72, 91 S.Ct. 764. Applying this principle, the Supreme Court acknowledged that allowing declaratory judgments against pending state criminal prosecutions would (1) “serve as the basis for a subsequent injunction against those proceedings ... and thus result in a clearly improper interference with the state proceedings,” and (2) “even if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone [would have] virtually the same practical impact as a formal injunction .... ” Id. (emphasis added). In this way, it recognized that a declaratory judgment had the same practical limiting effect on a state prosecution as an injunction. Id. at 78, 91 S.Ct. 764. (“Ordinarily, however, the practical effect of the two forms of relief will be virtually identical....”)
I am not persuaded by the Majority’s reliance on Stejfel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), to dismiss this authority. Stejfel did not purport to overrule Samuels. It merely acknowledged that “different considerations enter into a federal court’s decision as to declaratory relief, on the one hand, and injunctive relief, on the other.” Steffel, 415 U.S. at 469, 94 S.Ct. 1209. This is certainly true: the decision to grant declaratory judgment is a purely discretionary one. See Wilton v. Seven Falls Co., 515 U.S. 277, 287-88, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). The question is whether the considerations that led the Supreme Court to decide in Samuels that allowing declaratory judgments would undermine its holding in Younger are also applicable here. They are.
The concern in Samuels was that declaratory judgments would have the same practical effect of interfering with pending state proceedings as an injunction. Here, the concern is that a declaratory judgment has the same practical effect of interfering with pending immigration proceedings in immigration courts established by Congress and administered by the Executive branch. In both situations, a declaratory judgment will “serve as the basis for a subsequent injunction against those proceedings” and “even if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone [would have] virtually the same practical impact as a formal injunction ----” Samuels, 401 U.S. at 72, 91 S.Ct. 764 (emphasis added). This consideration was not present in Stejfel, which reaches the sensible conclusion that a declaratory judgment action can be filed when there is no pending proceeding to interfere with. 415 U.S. at 462, 94 S.Ct. 1209.
Furthermore, the fact that district courts must consider a variety of factors in deciding between declaratory and injunctive relief is irrelevant to whether a declaratory judgment “restrains.” The Majority implies that a declaratory judgment only restrains if it is the “functional equivalent” *1019 of an injunction. Maj. Op. at 1014. In this case, I believe that the two forms of relief are functionally equivalent. But even if they are not — even if a declaratory judgment is a “milder” form of relief — a milder form of relief can still “limit,” “restrict” or “keep [someone] back from action.” In this light, I am unconvinced that a declaratory judgment does not “restrain” the operation of § 1226(c).
Indeed, if a declaratory judgment does not “restrain” — that is “restrict, limit, confine” or “keep ... under control” the operation of a law — then what does it do? At its inception, the concept of declaratory relief was controversial because of the concern that such judgments were merely impermissible advisory opinions. See 10B Charles Alan Wright et al., Federal Practice and Procedure, § 2753 (3d ed. 1998). These concerns remain real, which is why courts are required to ensure that a declaratory judgment action presents an actual controversy and not just an abstract question of law. See Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp. of Am., 257 F.2d 485, 489 (3d Cir.1958). The “fundamental test is whether the plaintiff seeks merely advice or whether a real question of conflicting legal interests is presented for judicial determination.” Id. Here, it must be assumed that plaintiffs are seeking a determination of their legal rights as a class, not merely advice. Surely the determination of the legal rights of an entire class of aliens “restrains” the Executive Branch’s legal authority over that class. See California v. Grace Brethren Church, 457 U.S. 393, 408 n. 21, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982) (“In enacting the Declaratory Judgment Act, Congress recognized the substantial effect declaratory relief would have on legal disputes.”).
Second, the Supreme Court’s interpretation of similar statutory phrases also supports my reading of § 1252(f)(1). The Tax Injunction Act states that district courts “shall not enjoin, suspend or restrain the ... collection of any tax under State law____” 28 U.S.C. § 1341. Recognizing that there is “little practical difference between injunctive and declaratory relief,” the Supreme Court held that this language stripped district courts of their jurisdiction to issue declaratory judgments as well as injunctions. Grace Brethren Church, 457 U.S. at 408, 102 S.Ct. 2498. Circuit courts interpreting the Johnson Act, which contains similar language limiting the ability of district courts to “enjoin, suspend or restrain the operation of’ public utility rates set by state agencies, have reached the same conclusion: the phrase “enjoin, suspend or restrain” covers declaratory relief. See Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1054 (9th Cir.1991); Tennyson v. Gas Serv. Co., 506 F.2d 1135,1139 (10th Cir.1974).
Alii is correct to point out that these statutes implicated concerns of federalism. But I find this attempt to distinguish the cases more illuminating than discouraging: if concerns of federalism were enough to persuade the Supreme Court to conclude that declaratory judgments would “enjoin, suspend or restrain” state tax systems, analogous concerns of inter-branch relations would seem enough to conclude that class-wide declaratory judgments would “enjoin or restrain” the operation of a system created by Congress and implemented by the Executive Branch.
Third, § 1252(f)(l)’s reservation of jurisdiction in the Supreme Court does not support the Majority’s interpretation. The Majority’s argument runs as follows: if “restrain” bars class actions seeking either an injunction or a declaratory judgment, then the district court would never have jurisdiction to certify a class; if the district court cannot have jurisdiction over a class *1020 action, there can never be appellate jurisdiction over a class action; if there is no appellate jurisdiction over a class action, then the Supreme Court could never have jurisdiction; thus, § 1252(f)(1) must allow jurisdiction over classes seeking declaratory relief. The problem with this argument is that it proves too much. Since Professor Neuman acknowledges that Article III jurisdiction is remedy-specific, his argument also demonstrates that the Supreme Court will never have jurisdiction to “enjoin” the operation of § 1226(c). Gerald L. Neuman, Federal Courts in Immigration Law, 78 Tex. L. Rev. 1661, 1686 (2000). Moreover, Professor Neuman recognizes that the scope of the Supreme Court’s authority to certify a class under its appellate jurisdiction is an open question. Id. The reservation of jurisdiction in the Supreme Court raises interesting issues of abstract law, but it has no bearing on the meaning of the word “restrain” and does nothing to support the Majority’s interpretation.
Fourth, because the statute is not ambiguous, we do not need to look to other portions of the statute for guidance. Alii concedes that the title of a statute does not trump its plain text; the title is relevant only as a tool to resolve doubt about its meaning. See Appellant Br. at 16 n. 6; see also Pennsylvania Dep’t of Corrections v. Yeskey, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (“The title of a statute ... cannot limit the plain meaning of the text.”) (internal quotation marks and citations omitted). Here, I have no doubts about its meaning. And even if I did, if “limit on injunctive relief’ “mean[s] what it says,” Maj. Op. at 1013, then it would be silly to allow class-wide injunctions as long as plaintiffs use two steps — a class action for declaratory relief followed by individual injunction actions — instead of one.[2]
In my view, the Majority’s strongest argument regarding statutory context is that the closely adjacent provision of 8 U.S.C. § 1252(e)(1)(A) prohibits “declaratory, injunctive, or other equitable relief.” However I do not see the relevance of the use of the term “declaratory” in § 1252(e)(1). The absence of that term in § 1252(f)(1) does not mean that Congress did not want to prevent actions for declaratory relief. Indeed, if I am right, Congress used the unambiguous word “restrain” because the word has a broad meaning that would encompass declaratory judgments. The words used in § 1252(f)(1) make it plain that the section is broader in scope than § 1252(e)(1)(A). The latter section, which applies to individual aliens, uses nouns to prohibit specific forms of relief. Section 1252(f)(1) seeks to limit a remedy that applies to entire classes and, to achieve that aim, uses broad verbs — “enjoin or restrain” — that encompass a range of court actions. See Philadelphia Newspapers, 599 F.3d at 310 *1021 (“In employing intentionally broad language, Congress avoids the necessity of spelling out in advance every contingency to which a statute could apply.”). That Congress uses different words to accomplish different objectives in different sections of a statute does not render its commands ambiguous.
Finally, Alii argues that he is not seeking a declaratory judgment to restrain the operation of the statute, but only to prevent a violation of it. This is legal sleight of hand. Alii wants to obtain a declaration that the Executive Branch’s execution of the law is unconstitutional. This is an attempt to “restrain” — to “keep in check or under control” the Executive Branch’s execution of the law.
In short, the language of § 1252(f)(1) states that courts have no jurisdiction to enjoin or restrain the operation of immigration detention laws as they apply to entire classes of aliens. I believe that a declaratory judgment, no less than an injunction, is such a restraint. For that reason, I would affirm the District Court.

. The Majority asserts that, because the “injunction-like effect of a declaratory judgment” action does not occur until after appellate review is exhausted, Congress could plausibly assume that the effect of a declaratory judgment is different from the effect of an injunction. Maj. Op. at 1015 n. 13. This is indicative of the Majority's penchant for elevating form over substance. The timing of a judgment’s effect has no bearing on its substance. Moreover, even if the Majority is correct, a declaratory judgment can act to ''restrain” the operation of § 1226(c) even if it differs in effect from an injunction. The question is not whether declaratory judgments and injunctions are equivalent; the question is whether a declaratory judgment acts to "restrain.” As the Majority concedes, the judiciary presumes that officials of the Executive Branch adhere to our interpretations of the law. Id. (citing Comm, on Judiciary v. Miers, 542 F.3d 909, 911 (D.C.Cir.2008)). A declaratory judgment respecting an entire class of aliens surely "restrains,” i.e., "limits,” "restricts,” the Executive Branch’s exercise of discretion over the members of that class.

. The illusion that a class-wide declaratory judgment ultimately differs in effect from a class-wide injunction quickly dissipates once it becomes apparent that every single member of the class can, and will, immediately seek an injunction grounded on the authority of the declaratory judgment. See Samuels, 401 U.S. at 72, 91 S.Ct. 764 (noting that a declaratory judgment can serve as the basis for a subsequent injunction); Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 119 (3d Cir.1990) (observing that “an action maintainable under both [Federal Rules of Civil Procedure 23](b)(2) and (b)(3) should be treated under (b)(2) to enjoy its superior res judicata effect and to eliminate the procedural complications of (b)(3), which serve no useful purpose under (b)(2)”) (internal quotation marks and citations omitted). Of course, § 1252(f)(1) allows an individual to bring an injunction, but this misses the point. A class-wide declaratory judgment, followed by individual injunctions from every member of the class is, in every consequence that matters, the same as a class-wide injunction. This is precisely the restraint that § 1252(f)(1) purports to prevent.